# IN THE UNITED STATES MIDDLE DISTRICT COURT OF PENNSYLVANIA,
## CIVIL DIVISION- LAW

ANDRE YANICK AINA,
PETITIONER,

V.                                        CASE No.

THE COMMONWEALTH OF PENNSYLVANIA,
Carmine W. Prestia
Thomas King Kistler
Jonathan David Grine
Kathleen Kane
Jason A. Lambrino
PENNSYLVANIA STATE POLICE,
Trooper Luke Straniere
Trooper Jeremy Hoy
Trooper Corporal Grenci
CENTRE COUNTY DISTRICT ATTORNEY'S OFFICE
Stacy Parks Miller
Adam Luke Morris
Jessica Heveran Lathrop
CENTRE COUNTY CORRECTIONAL FACILITY
C.O. Lieutenant Rusnak
C.O. Baughman
C.O. Lear
C.O. Corl
PENNSYLVANIA DEPARTMENT OF CORRECTIONS
BARRY SMITH, HOUTZDALE SUPERINTEDENT
MOHAMMAD NAJI, MEDICAL DIRECTOR
KURT GEOFFREY MATTERN, DENTAL SURGENT SPECIALIST
TRACY BAKAYSA, DENTAL ASSISTANT
JOHN DOE

JOHN DOE 2
JOHN DOE 3
JOHN DOE 4
JOHN DOE 5
JANE DOE
JANE DOE 2
JANE DOE 3

## CIVIL COMPLAINT

NOW COMES the Plaintiff, Andre Yanick Aina, before the Honorable Court to Petition

the Court to Start the Civil action for **20,318,000.00 US Dollars** in Compensatory Damages and

**100,000,000.00** in Punitive Damages. This civil action against the Pennsylvania State Trooper

Luke Straniere, Trooper Jeremy Hoy, Corporal Grenci, District Attorney Stacy Parks Miller,

Assistant District Attorney Adam Luke Morris, Assistant District Attorney Jessica Heveran

Lathrop, Attorney General Kathleen Kane, Centre County Judge(s); Thomas King Kistler,

Jonathan D. Grine, Carmine w. Prestia, Brian Marshall, Centre County C.O. Coral, C.O.

Baughman, and C.O. Leer, Barry Smith, Mohammad Naji, Kurt Geoffrey Mattern, and Tracy

Bakaysa and to have the immunity removed based on statute, 42 Pa.C.S.A. 5422, and the fact the

Commonwealth of Pennsylvania collaborated with said respondent(s) in an ill-will attempt to

injury the Petitioner through defamation of character, loss of consortium, loss of time, loss of

liberty, loss of wages , loss of time, pain and suffering, mental anguish, actual personal injury,

false arrest, wrongful conviction, malicious prosecution, and malicious abuse of process in the

Centre County Case No. CP-14-CR-00688-2015 based on misrepresented facts about the

elements of Count 1.18 Pa.C.S.A.6105 and Count 2. 18 Pa.C.S.A.6106. These were the reasons

the Petitioner had been arrested, when Count 1 had been dismissed with prejudice at the

Omnibus Suppression Hearing and Count 2 prima facie was never proven thereafter by the

Commonwealth which was later vacated after the Petitioner **had served 4 years, 11 months,**

**and 23 days** for failure the to prove the SKS-Rifle was an element as a "firearm" as defined by 18 Pa.C.S.A.6102. Thereafter the Commonwealth had misrepresented the factual basis of the arrest through malicious abuse and malicious prosecution of the Petitioner on a continuous basis in the ill will attempt to keep the Petitioner incarcerated. The Pennsylvania Superior Court had found out that both Trooper's that had testified and the Prosecutors in the case had misrepresented evidence factually, due to their false testimony, the final decision of the Pennsylvania Superior Court (Case No. 1469 MDA 2018) the Superior Court could only vacate the only remaining charge (18 Pa.C.S.A. 6106) which was the only remaining charge, the other counts on the indictment couldn't be thrown out because all other counts had been served in full. The following Petitioner/Plaintiff is suing in this civil complaint for damages, for loss of time, loss of freedom, wrongfully incarceration, defamation, mental anguish, malicious prosecution, malicious abuse of process, etc., in compensatory damages, and punitive damages, set forth in the complaint are facts of the following:

Factual History

1.  On April 8, 2015, the Petitioner had been pulled over approximately at 1:35 PM EST on I-80 Westbound. The Petitioner was Arrested on Charges ranging from Count 1. 18 Pa.C.S.A.6105 was dismissed with prejudice FELON NOT TO POSSESS(for not being a felon), Count 2. 18 Pa.C.S.A.6106 FIREARMS NOT TO BE CARRIED WITHOUT A LICENSE (Vacated for insufficient evidence), Count 3. 35 P.S. 780-113(a)(31)(ii)DRUG PARAPHENELIA(found after initial traffic stop because no drugs were found at initial

traffic stop), Count 4. 35 P.S. 780-113(a)(32) SMALL AMOUNT OF MARIJUANA(no

marijuana found at the initial traffic stop found after the false arrest), Count 5. 18

PA.C.S.A.908 OFFENSIVE PROHIBITED WEAPON (exception in subsection (b)of

statute would have overturned this conviction if the Petitioner hadn't served this sentence

in full), Count 6. 75 Vehicle Code 3313 (d)(1.1) LEFT LANE VIOLATION (no evidence

of the Petitioner being in the left lane), Count 7. 75 Vehicle Code 3362 SPEEDING (was

found innocent),(Exhibit(s) 13, 5). Trooper Corporal Grenci was the officer who stated

on the video that the petitioner "is he a felon? and to check if he had any

felonies"(**request discovery video of Motor Vehicle Recording**) Exhibit 27. The

statements the Petitioner made was that he was a ghostwriter/musician at the time and

made music for several artists and worked with rappers in businesses regarding T-Shirts

which the officer's false arrest had hindered by having taken the Petitioner's artwork and

raps and confiscating them and then destroying them (valued at Est.50-75% Royalties for

each song), for John Doe's 1-5 and Jane Doe's1-3 based on Confidentiality Agreement.


2.   On April 22, 2015, the Petitioner had his Preliminary and was wrongfully bound over to

the Trial Court by Judge, Carmine W. Prestia, due to the fact the Commonwealth, Adam

Luke Morris, had misrepresented the main charge of the arrest in Count 1. 18

Pa.C.S.A.6105 **which was dismissed with prejudice.** Furthermore the Commonwealth

had failed to show the prima facia in the Count 2. 18 Pa.C.S.A. 6106 in which the first

element (a) proving it's a "firearm" as defined in 18 Pa.C.S.A. 6102. The prosecutor

Adam Luke Morris had allowed the Trooper to use Count 1 in the indictment with false

facts and his own actual misrepresentation of the law by misrepresenting facts of PA Law

, in which the Court used case law in the opinion, _Freeman v.Pennsylvania State Police,_ _2 A.3d 1259,_ after having persuaded the court with falsely represented facts in an argument so the case wouldn't get dismissed outright by misrepresenting these exacts facts, "that the statute in Virginia was equivalent to a felony in Pennsylvania" (Preliminary Transcripts Page.18 Line.9-Page.19 Line.22) (which was later found to be false) in Exhibit 12-O, to misrepresent the _prima facia_ to Preliminary Court. Furthermore, this was the basis for the unlawful arrest as shown, the Petitioner had an exception to having a "stun-gun(taser) for his protection (self-defense) because he carries large somes of money" an affirmative defense in 18 Pa.C.S.A.908(b) as stated by the Trooper in testimony (Preliminary Transcripts Page.6 Line20-23).

3.  On May 20, 2015, Stacy Parks Miller put her signature of approval on the original indictment after reviewing the case, Exhibit 5 .

4.  On May 24, 2015, Petitioner had been assaulted as a Pre-Trial Detainee having permanently damaging and scarring to his face, with a deviated septum, contusions on the frontal lobe due to the Petitioner fearing for his life and requesting to be put into a different cell and was forced into a cell, subsequently the Petitioner was slammed into a metal door with handcuffs on for approximately 3-4 minutes while guards sat and laughed, and had his eye hanging out of the socket in which the Petitioner/Plaintiff was required to have surgery on his eye and CT Scan and MRI of the all ligaments in facial and bone structure and X-ray on his ankle were he was taken to Nittany Hospital for his injuries with failure to get an ambulance from the Centre County Prison, Exhibit(s) 14,15.

5.  On May 25, 2015, Petitioner had been released from Nittany Hospital, Exhibit <u>14</u>.

6.  On July 31, 2015, The Plaintiff was forced to sign under duress a Jury Trial Waiver by Deborah Lux in order to receive a Omnibus Pre-Trial Motion to Suppress/ Motion to Dismiss (NUNC PRO TUNC) Hearing. Therefore, the Plaintiff proved that the prosecution had abused the Plaintiff right to due process in which the sentence was vacated based on insufficient evidence and actual innocence.

7.  August 3, 2015, The Plaintiff was not in the colloquy for his Jury Trial waiver due to the fact he had been made to believe it was needed but in fact wasn't necessary for the judge to make a determination in the Omnibus Suppression issue, and due to that the Plaintiff wasn't knowingly, voluntarily, and willingly giving up that right in-front of the suppression judge this was unconstitutional and violated the Plaintiff's rights and the PA legislature.

8.  August 18, 2015, the Plaintiff had his Suppression Hearing, in front of Judge Johnathan D. Grine, the inconsistencies and misrepresentation of facts in Trooper Luke Straniere testimony along with no discovery of the SKS-Rifle length or barrel length led the judgment to be erred and the lack of prima facie evidence on Count 2. 18 Pa.C.S.A.6106 for the first element that the SKS-Rifle was (a) "firearm" as defined in 18. Pa.C.S.A. 6102, which didn't allow the plaintiff to have a fair trial.

9. August 26, 2015, Count 1. 18 Pa.C.S.A.6105 had been **dismissed with prejudice** based on the agreement of both parties in which the Omnibus Pre-Trial Motion to Dismiss(NUNC PRO TUNC)/Motion to Suppress was based on found, factually the Petitioner wasn't a felon and Count 1 had factual information that prejudiced the Petitioner's arrest through Count 2, which were found to be an unlawful arrest and baseless (Post Conviction). The actions that had followed were the fruit of the poisonous tree and should have been dismissed, Exhibit 5.

10. On or about September 2, 2015, Assistant District Attorney Adam Luke Morris had signed the jury trial waiver without the signature of the any judge and without the colloquy of the Plaintiff knowingly, voluntarily, and willingly giving up the right to a Jury Trial. Adam Luke Morris also had filed a Brief accompanied with the Commonwealth's Memorandum of Law, Proposed Finding of Fact, and Conclusion of Law,(Exhibit 6, 7) which fails to prove the SKS-Rifle element of being a "firearm" in measuring barrel length and actual length as defined in 18 Pa.C.S.A.6102.

11. September 3, 2015, Kathleen Kane, Pennsylvania Attorney General, had signed off on the Motion for Forfeiture and Condemnation of 3,090.00 US. Dollars and an I-Phone 6. The Commonwealth had been Ruled **Returnable** as long as the Petition was timely answered.

12. September 18, 2015, the Omnibus Pre-Trial had been **Denied,** based on false information found in the Proposed Finding of fact, Memorandum of Law, and Conclusion of Law which were placed in the brief filed.

13. September 25, 2015, the Plaintiff had his Pre-Trial Conference in which the Plaintiff had asked his Lawyer at the time to relinquish his Jury Trial waiver, in which the Plaintiff's Trial Counsel, Deborah Lux, had told the court and wrote it in her notes.

14. October 3, 2015, Deborah Lux the Plaintiff's Attorney had went against the Plaintiff's wishes and had abused the process by scheduling a Non-Jury Trial.

15. October 5, 2015, was scheduled to be on a Jury Selection in which Deborah Lux had stated that the Plaintiff was supposed to have been brought for Jury Selection but the Centre County Sherriff's Office failed to bring him which was her reasoning for why the Jury Trial Waiver that was signed on July 31, 2015, was used and then taken back on September 25, 2015.

16. On October 17, 2015, the Plaintiff was given the Notice to Appear to his Non-Jury Trial on November 2, 2015, in which the record was never lost.

17. On October 28, 2015, the Plaintiff had filed a timely Answer to the Forfeiture and Condemnation that was served on October 13, 2015.

18. On November 2, 2015, the Plaintiff had his Non-Jury Trial in which the President Judge Thomas King Kistler was presiding, in which Count 1. 18 Pa.C.S.A.6105 was dismissed

with prejudice FELON NOT TO POSSESS, Count 2. 18 Pa.C.S.A.6106 FIREARMS

NOT TO BE CARRIED WITHOUT A LICENSE, Count 3. 35 P.S. 780-

113(a)(31)(ii)DRUG PARAPHENELIA, Count 4. 35 P.S. 780-113(a)(32) SMALL

AMOUNT OF MARIJUANA, Count 5. 18 PA.C.S.A.908 OFFENSIVE PROHIBITED

WEAPON, Count 6. 75 Vehicle Code 3313 (d)(1.1) LEFT LANE VIOLATION, Count

7. 75 Vehicle Code 3362 SPEEDING. In which the Plaintiff was handed a verdict on the

following: Count 1. 18 Pa.C.S.A.6105 was **dismissed with prejudice** FELON NOT TO

POSSESS, Count 2. 18 Pa.C.S.A.6106 FIREARMS NOT TO BE CARRIED WITHOUT

A LICENSE **Found Guilty**, Count 3. 35 P.S. 780-113(a)(31)(ii)DRUG

PARAPHENELIA **Found Guilty**, Count 4. 35 P.S. 780-113(a)(32) SMALL AMOUNT

OF MARIJUANA **Found Guilty**, Count 5. 18 PA.C.S.A.908 OFFENSIVE

PROHIBITED WEAPON **Found Guilty**, Count 6. 75 Vehicle Code 3313 (d)(1.1) LEFT

LANE VIOLATION **Found Guilty**, Count 7. 75 Vehicle Code 3362 SPEEDING **Found

Innocent**. During Trial and in the closing arguments Jessica Heveran Lathrop had

falsified that the Petitioner needed a license for this firearm and the element was proven

by the Commonwealth, Trial Transcipts ({Page.20 Line.12-Page. 21 Line.1} {Page.60

Line.20 -Page.60 Line.18.}) Exhibit 3 .


19. On December 9, 2015, the Plaintiff had received an Order filed to the Court by ADA

Jason A. Lambrino saying he failed to answer the Forfeiture and Condemnation served on

October 13, 2015, which was false due to the fact the Petitioner had filed an Answer on

October 28, 2015, (Exhibit(s)16,17) in which this was another malicious prosecution in

which false narrative were used against the Plaintiff that forfeited the money which has matured in an interest compound bearing account according to the legislature.

20. December 17, 2015, the Petitioner was sentenced to 3-6 Years for Count 2. Which was ran concurrent to all charges. During Sentencing (Exhibit 4, Transcripts Page 17 lines 2-10) the Prosecutor Jessica Heveran Lathrop had willingly requested for the destruction of all contraband relating to the case which had prejudiced the Petitioner's appeal, which was a *Brady* violation.

21. On December 21, 2015, the Petitioner had filed his Post Sentence Motion in a timely manner and was given a hearing on February 29, 2016. In which the Motion was **Denied.**

22. On March 11, 2016, the Petitioner had filed his Appeal through his appellant lawyer Philip M. Masorti. In a Pro Se hearing for the Plaintiff's 3,090.00 USD and I-Phone 6 the Petitioner had stated his businesses in which profits were made but the fact was that the Court had used the testimonies of Trooper Jeremy Hoy and Trooper Luke Straniere pending felony Nevada case as proof to forfeit the Plaintiff's money, which later the Nevada case had been dismissed after the adjudication, the Money was forfeited illegally without proper due process as seen in Exhibit 16, 17.

23. Thereafter the Plaintiff s Appellant Briefs were submitted on or about August 22, 2016.

24. On December 9, 2016, the Superior Court had came up with a decision in which they **affirmed** the Centre County Trial Court decision in Case No. 417 MDA 2016, this was based on the false information and misrepresented facts of how the initial traffic stop video had occurred through the Trooper testimony that was used and filed in the Commonwealth's Memorandum of Law, Proposed Finding of Fact, and Conclusion of Law that was filed in the Suppression Hearing.

25. On March 16, 2017, the Plaintiff had filed a PCRA Petition claiming Trial Counsel Deborah Lux, and Appellate Counsel Philip M. Masorti for being ineffective for the insufficiency of evidence and affirmative defenses in declarations, BB, CC, and DD were facts that were presented and added details of the insufficiency of evidence in regards to the SKS-Rifle and an affirmative defense of the taser which had been in amendment filed on or about April 24, 2017, in Exhibit 12 .

26. Thereafter, the Plaintiff had been given PCRA Counsel Charles Kroboth, Exhibit 5 .

27. On September 20, 2017, Plaintiff had claimed the PCRA Counsel Charles Kroboth ineffective for failure in taking action in assisting the Plaintiff in his PCRA Claims which were shown to have merit amongst filing his PCRA *Pro Se,* Exhibit 5 .

28. On October 23, 2017, on a telephone conference the Plaintiff had received stand-by PCRA counsel, Karen G. Muir, based on the Judge Thomas King Kistler's decision on

allowing the Plaintiff to go *Pro Se* at the Court Hearing through telephone conference, Exhibit 12 .

29. On December 19, 2017, the Plaintiff had a PCRA Conference/Motion Discovery Hearing in front of Judge Thomas King Kistler for in which the Plaintiff had addressed the issue that there was a *Brady* violation and the SKS-Rifle was insufficient evidence in the element of a "firearm" as seen in PA.C.S.A. 6106 and defined in PA.C.S.A. 6102. The other material evidence that had been used had been falsified for the wrongful conviction of the Plaintiff, the Motion had been subsequently denied, this same motion was refiled the same day as the hearing because the Commonwealth had argued it was my burden to prove my claim regarding the measurement of the SKS-Rifle, The Plaintiff's argument was that the Commonwealth never had proved that burden, Exhibit 12, 22.

30. On April 6, 2018 the Plaintiff had a Motion for Discovery Hearing in front of Judge Brian K. Marshall in which the Petitioner had argued the same points as in the prior motion heard on December 19,2017, with a different judge, valid points were drawn based on the lack of proving the SKS-Rifle hadn't been measure but again the Assistant District Attorney Matt Metzger argued the fact that there was no valid proof of my points based on the court having dismissed the prior motions with almost the same arguments which prolonged the bad faith prejudice the Plaintiff had already incurred. As a result on April 9, 2018, an Order was given to Denying the Motion, Exhibit 5, 12, 22.

31. On May 15, 2018, an Order was given regarding my PCRA claims granted in part and denied in part subsequently my issues for the Brady violation/Insufficient evidence on the SKS-Rifle were denied and the only issue that was granted was the Jury -Trial Violation and giving me a Non-Jury Trial, as seen in Exhibit 5, 12, 22, which the Plaintiff had filed a Motion for Reconsideration on June 1, 2018 regarding these issues.

32. On June 4, 2018, an Order was given for a scheduled Evidentiary Hearing on July 6, 2018, as seen in Exhibit 5, 12, 22.

33. On June 20, 2018 the Plaintiff was given an Order Dismissing all arguments for being untimely filed but were actually timely filed based on the fact the Plaintiff had still been in imprisonment at SCI-Houtzdale, through the mailbox prisoner rule, he had put the motion into the mailbox on June 1, 2018, Exhibit 5, 12, 22.

34. On July 6, 2018 the Plaintiff had his Evidentiary Hearing in which the Plaintiff had exemplified that the SKS-Rifle's measurement wasn't given. The SKS-Rifle essential element of the crime as being labeled a "firearm" had not been proven which leads to reasonable doubt. The firearm not having been proved as a "firearm" lacks the prima facie evidence for Count 2. 18 Pa.C.S.A. 6106, which had been the reason for the unlawful arrest and ultimately the wrongful conviction of the Plaintiff. Trial counsel's actions were ineffective in saying he needed a Jury Trial Waiver in order to get a suppression hearing when in fact the suppression motion that was done by Deborah Lux and raising an affirmative defense in 18 Pa.C.S.A. 908(b) which was ultimately correct

and that Commonwealth's malfeasant acts regarding the factual information in the suppression issues, that was misrepresented even during and after the appeal in the Commonwealth's filing  was a *Brady* Violation and misconduct that the Plaintiff had claimed from around the time he filed his PCRA Petition(s) in April, which hadn't been rectified by the District Attorney's office which shows current bad faith by not rectifying all the factual information that was misrepresented during Court, which would have allowed the Plaintiff to have been found innocent at suppression. Ultimately then the motion to dismiss would have been **Granted** based on these facts that were misrepresented and supposed to have been fixed *NUNC PRO TUNC.* The Commonwealth's prejudice ensued, in which the Objections toward the Plaintiff kept being Sustained in this argument being presented to the Court while the Plaintiff was trying to show bad faith was occurring and that the Commonwealth had failed in proving the burden of proof on Multiple Counts which would lead to fruit of the poisonous tree doctrine, Exhibit 5, 12, 22.

35. On July 24, 2018, the Plaintiff's PCRA Petition was dismissed/denied, Exhibit 5, 12, 22.

36. August 10, 2018 and August 14, 2018 the Plaintiff had filed a Writ of Habeas Corpus and Motion for Reconsideration regarding insufficient evidence again with the SKS-Rifle issue that the "firearm" an essential element wasn't proved throughout the course of Trial, as seen in Exhibit 5, 12.

37. On August 21, 2018 the Plaintiff had appealed through the prisoner mailbox rule, the denial and dismissal of the PCRA Claims to the Pennsylvania Superior Court, as seen in Exhibit 5.

38. On August 24, 2018 The PCRA Trial Court had denied both the reconsideration and the Writ of Habeas Corpus, as seen in Exhibit 5.

39. On August 29, 2018 The Superior Court had received the Notice to Appeal was claimed as timely by both the Centre County Courts and the Superior Court, as seen in Exhibit 5.

40. On September 11, 2018, the Centre County Courts asked for the Pa.R.A.P. 1925(b).

41. On or about September 29, 2018, the Pennsylvania Superior Court had given an Order to the Judge Brian K. Marshall to Answer based on Pa.R.A.P. 1926 the decision that was made the decision that was made on the July 24, 2018 in the PCRA Petition denial/dismissal, Exhibit 5.

42. On or about November 30, 2018, the day in which the Superior Court had ordered the Judge, Brian K. Marshall, had been asked to be given his memorandum and conclusion of the denial, which was given to Superior Court thereafter with due diligence, Exhibit 5.

43. Thereafter there was an Order(s) given for the Appellate briefs to be turned in on or abouts January- February 2019 and was timely extended until March-April 2019, along

with an extension of a request for application to raise the Maximum word limit to explain all the facts in the Appellate brief.

44. On or abouts April 1, 2019, the Plaintiff had filed his Appellate Brief in a timely manner to the Pennsylvania Superior Court.

45. On or about April 10, 2019, the District Attorney's Office had filed a Motion to Quash Appeal based on the length of the Appellate brief based on the number of Exhibit(s) and pages.

46. The Appeal had been squashed in an Order given on or about June 9, 2019 to the Plaintiff for failure to follow Pa.R.A.P.2135, Exhibit 12.

47. On the June 16, 2019 the Plaintiff had filed a Reconsideration for the Appellate Brief to be filed inside the Court Rule Pa.R.A.P. 2135, Exhibit 11.

48. On June 29, 2019, the Plaintiff had also filed the proof that he received after discovered evidence on the SKS-Rifle measurements but was an allegation the Plaintiff had made after trial and in prior PCRA filings which was the "firearm" element of the crime that was never found to be proven by the Commonwealth as Seen in Commonwealth v. Todd, 384 A.2d 1215, 477 Pa. 529 (1978); also Commonwealth v. Gillespie.

49. On July 9, 2019, an Order was given allowing the Plaintiff to file his Petition by August 17, 2019 as the final day without any more extension, Exhibit 11.

50. On July 29, 2019, an Order from the Centre County Trial Court recognized the Petitioner PCRA filed that had dimensions of the SKS-Rifle and where it was made and the model which had an actual credible claim with proof which was being argued in the appeal sub judis, and the Commonwealth had denied in earlier PCRA Petitions.

51. The Petitioner had filed his Appellate Brief that was granted through reconsideration on or about August 13, 2019 and was filed in a timely manner, Exhibit 11.

52. On September 1, 2019 an Order was given for the District Attorney's Office of Centre County to respond with their Appellate Brief.

53. On or about November 8, 2019 the Commonwealth of Pennsylvania had requested for an extension of time to file the appellate brief.

54. On or about December 8, 2019, the Commonwealth through the Centre County District Attorney had agreed that they had falsely arrested, charged, and untimely convicted the Plaintiff on Count 2. which was the reason for his incarceration, as seen in Exhibit 10.

55. Thereafter frivolous Motions were filed by the Commonwealth and the Plaintiff in trying to speed up the process of the appeal being granted because of the Plaintiff's wrongful incarceration when his innocence had already been announced by the Commonwealth

around in December 2019. Ultimately the Appeal was Granted on March 31, 2020 with an Order to vacate the 3-6year sentence, Exhibit 8.

56. On April 1, 2020, there was an Emergency Motion in the Centre County Court given for the Plaintiff to be released immediately upon consideration of the factual Wrongful conviction and actual innocence, Exhibit 8.

57. The Plaintiff was released from Pennsylvania Department of Corrections, custody at about 3 o'clock PM Eastern Time.

58. On or abouts April 1, 2020, a State of Emergency was declared in the State of Pennsylvania in which Courts weren't allowing paperwork to be filed in person which caused confusion for the Plaintiff, in due diligence the Plaintiff was hindered in filing a proper appeal based on misrepresented facts and has set the time from the 1-year mark after the 30 days in which the Plaintiff could appeal to the Supreme Court from May 1, 2020. Which would lead the Statute of Limitations to be considered under the same statute as part of the Pennsylvania Rules of Appellate Procedure as well as Pennsylvania Rules of Civil Procedure.

## INJURY/DAMAGES TO THE PLAINTIFF

## SYNOPSIS

### Loss of Consortium

59. The Plaintiff had been dating a Women since around August- September 2014 and based on the scrutiny of this case and the defamation regarding music and the Plaintiff's chance for a normal marriage had been tarnished when the Plaintiff had been incarcerated without being able to see his loved one whom he had been dating based on the wrongful conviction and thereafter based on the infidelity of trust issues based on defamation of my character in other relationship's while the Plaintiff was incarcerated. The relationships that the Plaintiff had incurred after false imprisonment based on those trust issues, the result was a loss of consortium.

**Compensatory Damages** 500,000.00 USD

**Punitive Damages** Requested

### Defamation of Character

60. The Plaintiff had made a statement about his earnings with other musicians, business associates regarding money and future plans, artwork, music lyrics which was later used as public record in which other artists had used to defame the Plaintiff's career as a musician/songwriter. Due to his failure to deliver those songs he had written to an undisclosed artist his business reputation as a musician and song writer was tarnished.

**Discovery Requested on the Copies of Music Lyrics as Proof**

**Compensatory Damages** Requested 500,000.00 USD

**Punitive Damages** Requested

## Actual Personal Injury/Disfigurement

61. The Plaintiff had been injured on May 24, 2015, when he was forced in a cell he didn't want to be in by C.O. Corl and Baughman, accompanied by C.O. Lear in the Restricted Housing Unit to cell 7 which is an isolation cell with an inmate he didn't want to be with in the cell, as result the Plaintiff was forced into the cell and was beaten for 3-4 minutes in a cell. The door was closed and the C.O.'s stood outside the cell window laughing as the Plaintiff's face was slammed into the cell door until the Plaintiff's eye socket was swollen and hanging off his face while being punch and kicked by the other cellmate, as seen in Exhibit(s) <u>14, 15</u>.

**Requested Amount** 1,000,000.00 USD Compensatory Damages

**Punitive Damages** Requested

## False Arrest/False Imprisonment/Perjury

62. The Plaintiff had been unlawfully arrested, falsely imprisoned (Preliminary Transcripts Arrest;{Page. 5 Line.20- Page. 6 Line.20}{Page.15 Line 21-Page.16 Line.18};Miranda Rights{Page.6 Line.18-Page.7 Line22}Exhibit <u>1</u>)which were found to be a false narrative

based on the case being vacated and the Trooper perjured himself about the arrest being

and being mirandized through an inconsistent statement,(Suppression Transcripts

{Page.32 Line.11-Page.35. Line 21};Miranda Rights{Page 43 line 20 through 44 line 2}

Exhibit 2) to then further find a way for the Plaintiff to be convicted based on his prior

experience as an officer of the law through his training and inconsistent statements to be

formulated at Trial which all his statements were inconsistent (Non-Jury Trial

Transcripts; Arrest {Page.20 Line1-20}{ Page 22 Line.1-14};Miranda Rights{Page.24

Lines 1-18}{Page.28 Line.2-Page.29 Line.4) .


**Requested Amount** 1,000,000.00 USD Compensatory Damages

**Punitive Damages** Requested



**Malicious Prosecution/Abuse of Process/**


63. The Commonwealth of Pennsylvania ADA Adam Luke Morris had misrepresented the

facts that the Plaintiff's Virginia misdemeanor conviction were equivalent to a

Pennsylvania Felony conviction which was used to bound over the case for a Felon Not

to Possess in Count 1.18 Pa.C.S.A. 6105(A) which was dismissed with prejudice. ADA

Adam Luke Morris allowed the case to continue based on unproven facts of the essential

element in Count 2. 18 Pa.C.S.A. 6106(A)(1) under Commonwealth v. Todd, 384 A.2d

1215, 477 Pa. 529 (1978); *also Commonwealth v. Gillespie.* In which the first element is

a "firearm", the SKS-Rifle in question must be measured and the barrel length to see if it

meets the requirements set forth in the definitions of a "firearm" as defined in 18

Pa.C.S.A. 6102. Which the Commonwealth failed to establish that burden of proof.

Which ADA Jessica Heveran Lathrop said she had established at Trial at the conclusion

of trial(Non-Jury Trial Transcripts; Reasonable Doubt {Page.60 Line.20- Page.61

Line.18}; 1st Amendment violation{Page.66. Line.16-Page.67 Line.23}Exhibit 3 ), were

the Plaintiff was abridged from speaking about his Constitutional violations about his not

wanting a Non-Jury Trial and the perjured statements regarding the SKS-Rifle which was

a false arrest based on Count 2 being vacated. Furthermore, the Plaintiff's case was

prejudiced even more when ADA Jessica Heveran Lathrop had requested that the

evidence in the Plaintiff's case and all contraband be destroyed (Sentencing Transcripts

Page 17 lines 2-10, Exhibit 4 ). The continuous requests for Discovery by the Plaintiff

were on the basis of how long the weapon was, which was denied on several occasions.

In bad faith, the Commonwealth had hid and denied the SKS-Rifles measurements a total

of 6-7 times after it was held to be corrected; Post Sentence Motion, Direct Appeal Brief,

PCRA New Motion Commonwealth's Answer, Motion for Discovery Dec.19 ,2017,

Motion for Discovery Apr.6 ,2018, Denial/Dismissal of PCRA Claims, and Writ of

Habeas Corpus and Motion for Reconsideration, the Plaintiff had requested the SKS-

Rifle measurement information/discovery and was denied. In Count 5. 18 Pa.C.S.A. 908

Prohibited Offensive Weapon there was an affirmative defense of self-defense/protection

as seen in 18 Pa.C.S.A. 908(b) which was stated for the record on several occasions by

the Commonwealth and the Petitioner, but was still convicted of this crime and the

Petitioner wasn't allowed to appeal Count 5 due to the fact the Petitioner had served the

sentence in full which was an abuse of the process (Exhibits 1, 5, 9, 10, Preliminary

Transcripts Page.6 Lines.20-23,) but should have been dismissed due to the Omnibus

Pre-Trial Suppression Motion/Motion to Dismiss(Nunc Pro Tunc).

**Compensatory Damages** 5,000,000.00 USD

**Punitive Damages** Requested

### Loss of Liberty/Property/Constitutional Violations

64. The Commonwealth of Pennsylvania taken the Petitioner liberty and property and

destroyed his property, violated his due process, took his gun rights away from him, took

his right as a U.S. citizen to vote in the 2016 election and convicted him of his first felony

with the potential to have convicted him for 7 ½ years-15 years imprisonment for the

Petitioner's Indictment in which the Petitioner lost his liberty to exercise certain rights,

the right to be free from cruel and unusual punishment, life, liberty, property and the

pursuit of happiness of a dreams worth more than money. Exhibit(s),3 {Page.66 Line.16-

Page.67 Line.23}1st Amendment Violation; Exhibit 8, 2nd Amendment Violation;

Exhibit(s) 16,8  4th Amendment Violation; Exhibit 4 {Page.17 Lines.2-10}, Exhibit 25

DUI of Trial Judge , 6th Amendment Violation; Exhibit(s) 14, 15,  8th Amendment

Violation; Exhibit 8,  14th Amendment Violation.

Property Lost: Car Volvo S40, Phones with phone numbers of celebrities, (Exhibit 23)

Destroyed: Artwork, Lyrics, property in Nevada, a lifetime of networking. (Exhibit 23)

Constitutional Violations that were violated: 1st Amendment, 2nd Amendment, 4th

Amendment, 6th Amendment, 8th Amendment, 14th Amendment.

**Compensatory Damages** 1,000,000.00 USD

**Punitive Damages** Requested

## Loss of time

65. The Petitioner was Convicted and sentenced to 3-6 years for a crime he didn't commit. Spent 4 years 11months and 24 days imprisonment for actual innocence which started on the date of imprisonment April 8, 2015; Date of Release April 1, 2020.

**Compensatory Damages** 1,000,000.00USD

## Loss of Wages

66. The Petitioner was going to school on scholarship as long as he completed courses he was supposed to have completed his courses that year approximately during Fall of 2015. Where he was guaranteed a job at earning 200,000.00 USD per year minimum and guaranteed job placement. Where he was an Honor Roll Student and had a 3.8 GPA average and was offered other scholarships regarding BMW, Merecedes-Benz, and Aston Martin. This would have entitled him to a minimum of 200,000.00 USD per year for the five years incarcerated. Furthermore, the Petitioner has lost his range of motion in his

right wrist due to improper medical care from a displaced wrist bone from a compound fracture which doesn't allow the Petitioner to work or write properly like it used to prior to his incarceration. This caused him to lose artistic and mechanical full range of motion which has impacted his work. Accompanied with song lyrics and artwork for shoe designs and T-shirts the Petitioner had missed out on shoe deals of the potential to make 10 million dollars. Also Ghostwriter deals from loss of property in which my phones were taken and weren't given back by the Pennsylvania State Police and were destroyed that caused a failure in communication from the network the Petitioner has incurred during a lifetime, as Seen in December 19, 2017's and April 9, 2018  Motion for Discovery Order, Exhibit 12.

**Compensatory Damages** 6,500,000.00USD which would be approximately 50,000-80,000 per year for 30 years for the loss of wages per both the cars and music through a business reputation and having to get surgery for his wrist to restore it to the way it was prior to his incarceration, which isn't covered by regular insurance.

**Punitive Damages** Requested.

**Loss of Time**

67. The Plaintiff lost 4 years 11months and 24 days of his life during his 20's which was the most pivotal point in his life, where the Plaintiff was enrolled in Universal Technical Institute, Exhibit 18, 8. Due to acts of malfeasance by the Commonwealth of

Pennsylvania and its subdivision of Law and Order through the persons specified in this complaint. Every year during his incarceration the Plaintiff had served time in Restricted Housing Unit Known for where Death Row Inmates serve time.

**Compensatory Damages** 1,818,000.00 USD equates to 1,000 per day

**Punitive Damages** Requested

### Pain and Suffering

68. The Petitioner had endured being beat up, broken bones which were misplaced that hurt everyday, teeth that were taken out due to dental negligence that haven't been replaced, loss of a future wife with arguments due to incarceration, scars of disfigurement being placed in the Restricted Housing United for getting water based on my teeth being taken out; once for getting food, getting kickout of bootcamp due to a warrant because of the Nevada case that was pending, being in a Prison Transport Vehicle for a month estimated amount of time with unsafe conditions, being ridiculed in jail through music defamation, public reputation was tarnished, business relationships tarnished and business reputation tarnished.

**Compensatory Damages** 1,000,000.00USD

**Punitive Damages** Requested

### Mental Anguish/Loss of Family/Death in the family

69. The Petitioner's Grandmother died on June 17, 2019. The Petitioner couldn't attend her funeral. The Petitioner's Grandmother held on to knowledge of things that were for the

Petitioner to get that he will never be able to get back because information of those things that were lost that money could never buy. His Grandmother was a special person to him and the Petitioner was not able to get to talk to her before her passing due to the loss of his numbers on his cell phone that were destroyed by the Commonwealth before the Petitioner was able to put her on his phone call list in time before her passing, Exhibit , The Mental anguish of being reminded of being defamed all the time.

**Compensatory Damages** 1,000,000.00USD

**Punitive Damages** requested

**TOTAL DAMAGES**

**COMPENSATORY DAMAGES: 20,318,000.00 USD**

**PUNITIVE REQUEST 100,000,000.00 USD**

- **CIVIL JURY TRIAL REQUESTED**

### <u>EXHIBITS</u>

Exhibit 1. Preliminary Transcripts

Exhibit 2. Suppression Transcripts

Exhibit 3. Non-Jury Trial Transcripts

Exhibit 4. Sentencing Transcripts

Exhibit 5. Complete Trial Court Docket

Exhibit 6. Omnibus Pre-Trial Motion to Suppress/ Motion to Dismiss NUNC PRO TUNC

Exhibit 7. Commonwealth Memorandum of Law, Proposed Finding of Facts, and Conclusions of Law.

Exhibit 8. Letter of Acknowledgement of Innocence (Centre County District Attorney Office's)

Exhibit 9. The Superior Court of Pennsylvania PCRA Decision on Appeal

Exhibit 10. PCRA Appellee's Brief (Centre County District Attorney Office's Answer)

Exhibit 11. Plaintiff's PCRA Appellant Brief

Exhibit 12. PCRA Declarations filed with all Pro Se PCRA Petitions of Perjury/Prosecutorial Misconduct/Abuse of Process/ Insufficient Evidence.

Exhibit 13. Original Indictment/Criminal Complaint

Exhibit 14. May 24, 2015- May 25, 2015 Nittany Hospital Records

Exhibit 15. Grievances of Exhausting Remedies of May 24, 2015-May 25, 2015

Exhibit 16. October 28, 2015 Answer to Forfeiture and Condemnation and Related Paperwork

Exhibit 17. Order December 9, 2015 for Decree to Forfeiture and Condemnation

Exhibit 18. Universal Technical Institute Rancho Cucamonga Proof of Enrollment.

Exhibit 19. Nevada Elko County's Commitment after Sentencing

Exhibit 20. Grievances of Exhausting Medical/Dental Negligence with Medical Records

Exhibit 21. Grievances of Due Process Violations in Department of Corrections

Exhibit 22. PCRA Orders Given during Due Process

Exhibit 23. Nevada Property Losses as a result of PA Wrongful Conviction

Exhibit 24. Pennsylvania Property Receipt **Discovery Requested**

Exhibit 25. Thomas King Kistler DUI Charges during PCRA Petition being Sub Judis

Exhibit 26. Death Certificate

Exhibit 27. Motor Vehicle Recording **Discovery Requested**

**FURTHER THIS DECLARANT SAYETH NAUGHT**

Dated on this _20th_ day of _April_____, 2021.

I, Andre Yanick Aina, do hereby verify that the facts set forth in the above Civil Complaint and

Synopsis are a declaration of truth and are true and correct to the best of my personal knowledge

or information and belief and that any false statements herein are made subject to the penalties of

Section 4904 of the Crimes Code, (18 Pa.C.S.A.4904) and applicable civil statutes, relating to

unsworn falsification to authorities.

Respectfully Submitted, _Andre Yanick Aina_

Andre Yanick Aina

Plaintiff

*In Propria Persona*

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: *Andre Yanick Aina*

Signature: *[signature]*

Name: *Andre Yanick Aina*

Attorney No. (if applicable):